Morning. Morning. Grant LeBlanc on behalf of the appellant. May I reserve two minutes for rebuttal? Sure. Thank you. The district court erred in two ways. In the context of a warrantless vehicle search incident to arrest, the rule is that an arrestee must either be an occupant or a recent occupant. And the district court erred here when it held that Mr. Johnsonmarin was a recent occupant of a subsequently searched vehicle and denied his motion to suppress. Second, the district court imposed a substantively unreasonable condition when it exiled Mr. Johnsonmarin from his hometown, the city and county of San Francisco. Turning first to the search, the Supreme Court has consistently required in a line of cases, Belton, Thornton, and Gant, that in the vehicle search context, an arrestee must either be an occupant or a recent occupant. There's no dispute in this case that Mr. Johnsonmarin was not an occupant at the time that he was first sighted by the police officers and then subsequently arrested. So the inquiry then turns to whether or not he was a recent occupant. Thornton set forth the guideposts for analyzing recent occupancy. And Thornton said that recency, that determination turns upon whether the arrestee was the arrestee's temporal or spatial relationship to the vehicle, temporal or spatial relationship. Mr. LeBlanc, let me ask you a question. If they have to have seen him in the car, you win. If they don't have to see him in the car, I don't understand why they can't draw an inference that because the car is running, the driver's seat is empty, they know it's his car. Why that's not a logical inference to draw that he must have recently been in it. I think, Your Honor, we are aware of no case that where a court has found recent occupancy based just upon the inference. But what's wrong with that? What's wrong with the logic of that inference? Because to prove, to show that a warrant exception to the Fourth Amendment applies, it must be established by preponderance of the evidence. We have to concede it would be a reasonable inference, but a reasonable inference does not get over a preponderance of the evidence standard. Well, in the absence of any other explanation, why wouldn't that be enough? Well, Your Honor, I think there is an equally plausible explanation that's readily available on the record. There was a passenger in the vehicle at the time that the officers cited Mr. Johnson Marin, who could have been the driver of the vehicle. That's an equally plausible inference. There's no information in the record that he was in the vehicle. Why is it equally plausible? It's his car. Well, the car was running. He didn't have the keys. The passenger was in the passenger side. There's no information about the officers. The record is silent as to the officers having any information about when he was last in the vehicle. I think that that is certainly a reasonable inference, if not equally plausible. I do. And beyond that, the Supreme Court, the cases have consistently required more information than just an inference. In all of the cases that have upheld a vehicle search based upon recent occupancy, there's always been information that the law enforcement officers had. So in the case of either the arrestee was an occupant, like in Belton, they were a recent occupant, like in Thornton, meaning that the officers had seen, made direct observations of the defendant in the car. There had been a precipient witness who reported information about occupancy to the officers, such as in Mayo and Osyph, which was cited in our briefing, or even in the case relied upon by the government, Powell, out of the D.C. Circuit, where the defendants had basically admitted that they had pulled over because they really needed to go to the restroom. All of those information, all of those cases basically demonstrate that there's some information more than just an inference that is required to establish recent occupancy. And recent occupancy is a two-step inquiry. Counsel, Counsel, Judge Gould, if I could ask you a question. What bothers me on your argument, which I think is a hard argument to make, is that it's his car. You know, if it wasn't his car, if the car was not identified as one he had driven, and you just have him in the sidewalk and someone else in the passenger seat, you know, you might say, well, it's equally plausible. Maybe the other person brought the car there, and he's outside it and wasn't in it. But if it's his car, what's the likelihood that he wasn't in the car when it went there? I mean, why would we think – I mean, it's possible that the person in the passenger seat drove the car there and he wasn't in it, you know, in that time period. But why would we think that's probable that that's the case? Well, Respectfully, Your Honor, I think it's the government's burden to establish by preponderance that he was in the car, the occupancy, to establish occupancy. And there's no information in the record here that he had been in the car on that day, even though the record is clear that he had been observed by these arresting officers in the vehicle on at least half a dozen other occasions, although the last occasion is unknown. It is the government's burden to establish that this – the warrant exception applies by a preponderance standard. And so I have to maintain that I don't think that even a reasonable or plausible inference is sufficient to satisfy the preponderance standard. But it seems to me what you're really arguing, counsel, is that there wasn't any direct evidence, which I think is undisputed, of seeing him in the car that day. And in the other cases you've cited, they were easier cases, establishing that somebody was a recent occupant, but why isn't the circumstantial evidence enough? Well, I think I'll just return to my prior answer, Your Honor, which is the Supreme Court – the cases here establish that we refer to direct evidence in our briefing. That's the way we characterized it. But that isn't a rule. It's just, I think, a fair way to try to characterize the way that the courts have dealt with this, which is either the officers had information from a recipient witness, they'd made their own direct observations, or there was defendant's admissions. The Supreme Court's analysis of this space is that occupancy provides a workable rule, a workable rule that, as Justice Stevens said in Thornton, is easily applied and predictably enforced. And so it has wanted to establish, I think the occupancy required supplies that indispensable requirement that places the arrestee in the car and that the officers have knowledge of it. I think it's an indispensable requirement that the district court dispensed with here because it focused more on just Mr. Johnson Moran's spatial proximity to the vehicle and that he'd been observed in it on a number of occasions and the car was running. Okay. Counsel, before you run out of all your time, could you please address the condition of supervised release? I'm concerned about the banishment provision, but yet I know we have a prior precedent the Watson case and with, you know, several of our distinguished circuit judges who basically upheld the same provision in an earlier case from the same district court. And as a three-judge panel, we can't overrule Watson. So you've got to explain for us, I think, how it would be distinguished, you know, because of the different relations that he had in the city. Why is it a bigger problem for him than for Watson? I don't want to expire my time, Your Honor, but I think to the point, I think a big part of the court's analysis in Watson was that Mr. Watson had fraying relationships with his family. His family was moving out of San Francisco. That's not the case with Mr. Johnson Moran. His fiancée is here. His children are here. This is the only place he's ever lived. This is his home. It's a different analysis. The relationship with Mr. Johnson, Mr. Johnson Moran's relationship to the city and county of San Francisco is stronger, more compelling. And here, just as the Court's aware in the record, defense counsel objected when the Court initially said that Mr. Johnson Moran would be prohibited from anywhere that the 800-block gang operated. And then upon objection, the district court enlarged the condition to be coextensive with the city and county of San Francisco without explanation. I read that, and it looked to me like the judge was convinced that he was narrowing it, that because gangs are everywhere, he was trying to just limit it to just San Francisco, not expanding it. I have about a minute left. What's your answer to what I just read? I think the Court was concerned, but I think the Court automatically just referenced Watson and said, well, I've been upheld in doing this before, but it wasn't an individualized showing as to Mr. Johnson Moran as being reasonably necessary. Okay. I know you want to save your time, so thank you, Your Honor. Thank you, Your Honor. Good morning, Your Honor. My name is Ann Voights, and I represent the government. If I might begin by addressing the issue of the car search incident to arrest. I'd first like to note, in response to the defendant's point, that the Fourth Amendment doesn't impose the sort of evidentiary limitation that the defendant has asked for here, that one have either a police officer or another witness testifying to seeing the defendant in the car at the time, and that's inconsistent with the general approach under the Fourth Amendment, which looks to the totality of the circumstances. Here, what the district court did was draw reasonable inferences from the fact, which included the fact that the officers had seen defendant in this car before on multiple occasions, the fact that the car was running with the keys in the ignition in a neighborhood that was dangerous, and with somebody sitting in the passenger seat, but not in the driver's seat. Under those circumstances, we submit it was entirely reasonable for the court to make a factual conclusion that the defendant had been within the car in a fairly recent time period. Counsel, why does the dangerousness of the neighborhood matter? I think it goes to whether one would leave the car running with the keys in the ignition if there's a risk of the car being stolen. Presumably, the car's an easier target. Why does that make it more likely that this individual's a recent occupant? I understand your argument about his proximity to the car and the fact they'd seen him in the car and the engine's running, but why does it matter that it's running in a dangerous neighborhood? I think if it's in a neighborhood where you think the car might be at a risk of being stolen, leaving the keys in makes it easier for someone to take the car. That's the part I do understand. But why does that make it more likely that Mr. Johnson Moran exited? Because he's close by, meaning you wouldn't go far away? Because he's close by, you wouldn't go far away. You wouldn't leave it for a very long time period. Okay. Thank you. So that's why. And we submit that it's a sort of reasonable inference, for example, that the D.C. Circuit drew in United States v. Powell. Looking at the facts there, the police officers didn't find the men inside the car, but they did find the car running with someone sitting in the passenger seat. And based on all the totality of the circumstances, they said it's a reasonable inference that they were recent occupants. Do I understand correctly that at the district court you also argued as an alternative argument that the basic car search exception applies as well? I'm sorry? Do I understand that you argued at the district court that this is also permissible search as an automobile search, probable cause to believe there's drugs in the car? We did, Your Honor. And you have not raised that here on appeal. You're just going on the recent occupancy prong. In fact, we did raise it in our brief, and I can refer the Court to the pages. So we raised that argument in our brief at pages 20 through 21. As an alternative basis? Yes. Okay. And we'd submit that the Court would be equally justified in affirming the judgment on that basis. Why would we? We'd have to find that there was probable cause to believe there were drugs in the car? Or evidence of the crime. Okay. Why would we? What evidence supports that? Submit that here they found defendant, when they did the search of this person, they found him with a small quantity of marijuana, and they found a very large quantity of cash. And although they didn't count it at the time, it's reasonable to think that $924 is a fairly large amount to be carrying on oneself. And they – but the – even though defendant had said he was going to smoke marijuana, there were no rolling papers, no other drug paraphernalia with which he could smoke. And so based on that, and based on the officer's training and experience, he concluded that it was likely that he might find either drug paraphernalia or more drugs or other items such as scales or payo sheets in the car. I'm having a hard time figuring how you can assume that just because someone has a small amount of marijuana in his person that there's probable cause to believe there's going to be evidence or drugs in the car. I think it's the fact that he also had the large amount of cash that that was assumed. Okay. So what is – how does that tie into the car? If he's, in fact, selling drugs, there might be item – if he's selling drugs, there might be items in the car. There might be more drugs in the car. He might have a small quantity on himself but have more in the car. Alternatively – Well, that's might, but, I mean, how is it probable? I think it establishes a fair probability. Also, the fact that he said he was going to smoke and he didn't have anything on him with which to smoke the marijuana that he had, I think is the most direct tie between him and the defendant – between him and the car. If I might address very quickly, the defense counsel says that the court focused here, referring to the search incident to arrest, solely on the spatial proximity. And I think that's simply not consistent with the district court's order here. The court looked not just to the spatial proximity. Here, defendant was standing directly next to the car when the officers came up to him. They saw him approaching it, and when they stopped him, he was standing right next to it. But the court also looked to the proximity of time and drew an inference based on the fact that the car was running, that the driver's seat was empty, and that the officers knew the car was his. They'd seen him driving it before. And based on that, made a reasonable conclusion, a factual conclusion, about the recency of defendant's occupancy of the car. Counsel, I have a question about the – I think that I have the same question Judge Gould has about the restriction. And I'm really troubled by the language in the transcript compared to the language in the judgment. I read the language in the judgment as being considerably broader. Do you agree? I actually think the language in the – I think the language in the – Well, the language in the judgment says, He shall not be found in the city and county of San Francisco or any area frequented by gangs, plural. Not just the 800 block gang. Not just San Francisco. Any area frequented by gangs. I mean, arguably, that's any major metropolitan area in the United States where any gang could be found. I think that is potentially problematic. I think that wasn't raised by a defendant as a separate issue. The challenge has been, as I understood it primarily, to the city and county of San Francisco. To the extent that the written judgment in that extent is broader than what the Court said at oral – in its oral pronouncement at sentencing, then this Court could certainly remand for the Court to correct that, to have it be more. Counsel, let's assume we would do that at a minimum. But I haven't yet come to the idea that saying the guy can't step foot anywhere in San Francisco city or county is a reasonable condition of supervised release. You know, no broader than necessary for sentencing purposes. I know in Watson, the panel with Judges Clifton, Silverman, and M. Smith approved a similar restriction. But the facts were different. In that case, the ties with the city, with relatives, were somewhat attenuated. In this case, he's got a couple of kids in the city. So his kids can't be visited by him. Right? They'd have to move. They might not be able to afford moving. You know, why is this a reasonable restriction? Well, I would note two things. First, it's reasonable in light of the evidence that was in front of the district court. A defendant is a relatively young man who's 25 or 26 at the time of the offense. And at that point, they not only had the offense of conviction, but he had a previous conviction for being involved in a drive-by shooting that took place in San Francisco where he was the driver. And he also, as the PSR reflects, had been shot himself in San Francisco. So there's a – and he was a validated gang member of the 800 gang. And in light of all of those, I think that's strong evidence, as the district court said, that he needed to sever the ties with that gang. And I'd note that – But then why can't he do that by saying he can't go anywhere? Like he said – the judge said first before he received objection, can't go anywhere in San Francisco where the 800 gang is likely to be present. You know, how can he say you can't go anywhere in the county and city? That's basically an exile condition, right? Well – And I mean, why does it make sense to say a gang member can be exiled? It's got to move to another city. Well, I think importantly here, first, he can go into the city with the permission of the probation officer. And that's something that the court found important in Watson. So it isn't a categorical prohibition. And the district court did entertain the possibility that if the condition appeared to become unnecessary, that the defendant could come back and seek a modification of it. But I'd also note in this case that what they were struggling with, what they were trying to do, is to come up with an effective limitation. And the court had in front of it evidence that the defendant at a fairly young age had three sort of – had this conviction, had a prior conviction, and then had also been shot when he was in San Francisco. Let's suppose we take Mr. LeBlanc when we agree with him. I know you're arguing the opposite. But let's suppose we agree with him on this point. What would you have us do? What should we do? I think what would be appropriate in that case would be for this court to order it to be remanded so that the court couldn't either make additional findings to explain why it reached this particular condition or any alternative to impose a narrower limitation that would prohibit, for example, what Judge Gould said, that he not be allowed to go where the 800 gang is. May I just ask one clarifying question? Is it the government's position that the record that we have it now would permit the defendant to request permission for probation to visit his family in San Francisco? Yes. It is the government's position that he would be able – that he can go to the probation officer, and with the probation officer's consent, he can visit his family. So you must be getting that from the judgment, because that's the only place I see that in the judgment. But the other restriction that more narrowly defines the – just the 800 block gang is what I get from the transcript. Correct. All right. Thank you. Thank you. Thank you, Ms. Blank. Mr. LeBlanc, you have the last word. Thank you, Your Honor. Briefly, I just wanted to address Judge Silberman's question about the automobile exception and why we think it doesn't apply. To the point, Your Honor, I think there's an insufficient nexus between the arresting offense, which the district court found at record page 17, was possession of marijuana. The officers knew that it was a small amount of marijuana, less than a quarter  They smelled marijuana. Mr. Johnson admitted that he was going to the jail. He was going to smoke, didn't have a medical marijuana card, and there was an uncountable amount of money in his car, on his person. None of that has anything to do with the car. And the case was relied upon by the government, cited in a brief in McCoy, Caves, Leaser. All of those were automobile exception cases where the defendant was arrested while in the car or freshly coming out of the car, and they smelled marijuana coming from the car. Those cases are all different. The automobile exception here does not supply, or there was not probable cause under the automobile exception to search the car. And then, just, Judge Gould, as to recency, I just want to remind the Court that there's nothing in the record that, as to the recency in which Mr. Johnson had occupied this car. The record is silent. Thank you. Roberts. Thank you, Mr. Blankenship. Ms. Weitz, thank you, too. The case just argued is submitted. Good morning. 11-10494, United States v. Kim. Each side will have 10 minutes. Move the papers. Mr. Mitchell, nice to see you. Good morning. Nice to see you.
judges: Silverman, Gould, Christen